IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JANNALLA WADLINGTON,

    Plaintiff,

                          Case No. 2:17-cv-1068

    v.                          Chief Magistrate Judge Elizabeth P. Deavers

OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTION,

    Defendant.

## OPINION AND ORDER

Plaintiff alleges that Defendant, Ohio Department of Rehabilitation and Correction ("ODRC"), her employer, discriminated against her on the basis of her race and retaliated against her after making a complaint regarding the alleged discrimination. With the consent of the parties to the jurisdiction of the United States Magistrate Judge (ECF No. 6), 28 U.S.C. § 636(c), this matter is before the Court for consideration of ODRC's Motion for Summary Judgment (ECF No. 18), Plaintiff's opposition (ECF No. 19), and ODRC's reply (ECF No. 21). For the reasons that follow, ODRC's Motion is **GRANTED**.

I.

**A.    Factual Background**

    **1.    Plaintiff's employment at ODRC and nursing duties**

Plaintiff began working for ODRC as a licensed practical nurse ("LPN") at the Franklin Medical Facility ("FMC") in 2000 until approximately December 9, 2016, when she was

disability separated from employment with ODRC while she was on Temporary Total Disability through Ohio's workers' compensation system. (Deposition of Jannalla Wadlington, ECF No. 13 ("Plaintiff Depo."), pp. 12–14, 290, 300–01; Plaintiff Depo. Exhibit 73, ECF No. 13-1, at PAGEID # 554).

The FMC has a "clinic" and "floor," both of which care for patients. (*Id*. at 17, 21; Deposition of Jeff Mathaes, ECF No. 15 ("Matthaes Depo."), p. 16.) Plaintiff, through her union, bid into the clinic position, as one of the clinic nurses. (Matthaes Depo., p. 9.) After she started, Chris Ajongako, a registered nurse, was her supervisor. (Plaintiff Depo., pp. 84–85; Plaintiff Depo. Exhibit 17, ECF No. 13-1, at PAGEID # 404; Deposition of Chris Ajongako, ECF No. 14 ("Ajongako Depo."), pp. 7–8.) Nursing duties in the FMC clinic included assisting doctors; assisting with "TeleMed," which involved doctor-patient interactions via videoconference; charting for the doctors; noting when a patient may have been in for a past clinic appointment; preparing instruments for procedures and cleaning up instruments afterwards. (Matthaes Depo., pp. 10–12). A clinic nursing shift typically began at 7:30 a.m. (*Id*. at 13.) Nursing duties on the floor included providing direct patient care, passing pills, changing wound dressings, charting, and assisting with bathing and feeding. (*Id*. at 13–14). A nursing shift on the floor typically started at 7:00 a.m. (*Id*. at 13.)

Plaintiff considered working the floor to be more physically demanding than working the clinic. (Plaintiff Depo., pp. 21–22.) Before 2015, ODRC employed Nurse Aides to assist with nursing duties on the floor. (Matthaes Depo., p. 14.) Sometime in 2014 or 2015, ODRC eliminated the position of Nurse's Aide, requiring the nurses to perform all patient duties without assistance from aides. (*Id*. at 14–15; Ajongako Depo., pp. 30–33.) However, even before the elimination of the Nursing Aide position and after its elimination, nurses were always

2

responsible for the total care of the patient, including bathing and helping patients in and out of a wheelchair to a bed. (Ajongako Depo., pp. 30–33.)

The elimination of the Nurse's Aide position made staffing an issue. (Matthaes Depo., p. 15.) Supervisors had the right to move individuals to balance the needs of the patients in the institution. (Ajongako Depo., pp. 7, 11–12, 16–17; Mathaes Depo., pp. 16–17, 35; Plaintiff Depo., pp. 34–35.) Accordingly, supervisors had the authority to move nurses to the floor if there was a need and, indeed, people were moved around all the time. (*Id*.) The nursing staff generally disliked being reassigned. (Ajongako Depo., p. 16.)

### 2. Jeff Matthaes as Plaintiff's supervisor

Jeff Matthaes, a registered nurse, became a supervisor in 2012. (Matthaes Depo., pp. 7–8.) At the time he was promoted, Mr. Matthaes had not worked with Plaintiff as a co-worker. (*Id*. at 21.) When he was first promoted, Yvette Thornton was the Nursing Supervisor and the nurses in the clinic reported directly to her. (*Id*. at 8–9.)

A couple of years after he became a supervisor, Matthaes took responsibility for staffing and assignments to cover patient care at FMC. (*Id*. at 16–19.) While Mr. Ajongako was also a supervisor and split duties with Mr. Matthaes, Mr. Matthaes usually arrived earlier to work and took the scheduling responsibility. (*Id*. at 22–24; Ajongako Depo., pp. 8–9.) Mr. Matthaes discussed whether to reassign nurses with other supervisors and made decisions based on what needs were in the clinic and floor on each day. (Matthaes Depo., pp. 17–19, 35.) He also considered seniority when reassigning Plaintiff to the floor as another clinic nurse had more seniority than Plaintiff. (*Id*. at 29–31.) He had no concerns with Plaintiff's physical ability to handle a floor nurse position. (*Id*. at 27–28.) Mr. Matthaes never made any comments to Plaintiff about her race. (Plaintiff Depo., p. 252.) By late 2015 or early 2016, ODRC hired a

3

full-time medical scheduler, so Mr. Matthaes and other supervisors no longer had scheduling responsibilities. (Matthaes Depo., pp. 43–44; Ajongako Depo., pp. 21–22.)

In 2014, Plaintiff met with Mr. Matthaes and Ms. Thornton to complain about her work assignments and to discuss Mr. Matthaes' reasons for reassigning Plaintiff from the clinic to the floor. (Plaintiff Depo., pp. 34–35.) Plaintiff recalls learning from Mr. Matthaes that he could use her on the floor if staffing was short on the floor and if the clinic was having a "low workday." (*Id*. at 35.) Plaintiff testified that everything was "fine" after this 2014 mediation with Mr. Matthaes and Ms. Thornton. (*Id*. at 36.) In the six-month period before her injury in June 2016, Plaintiff was moved from the clinic to the floor not more than five times. (*Id*. at 234–36.)

3. **Plaintiff's injury on June 6, 2016 and involuntary disability separation**

On June 6, 2016, Mr. Matthaes reassigned Plaintiff from the clinic to the floor. (*Id*. at 146–47; Matthaes Depo., p. 53.) Plaintiff did not receive a shift report about patients she was caring for from the nurse who previously worked the shift on the floor. (Plaintiff Depo., p. 88.) On that day, Plaintiff tried to assist an inmate patient by transferring him from his wheelchair to his bed. (*Id*. at 14–15.) There was no indication, such as a colored card on the hospital room or colored wristband, that the patient was a fall risk. (Affidavit of Jannalla Wadlington, ECF No. 19-1, ¶¶ 2–3 ("Plaintiff Aff.").) She asked the patient if he could stand and he indicated that he could stand. (Plaintiff Dep., pp. 14–15.) However, when she attempted the transfer, he became deadweight, she held onto him, and they fell. (*Id*.) Someone called Mr. Matthaes to say there had been an incident. (Matthaes Depo., p. 52.) Mr. Matthaes went to check on Plaintiff, examined her, and found her in a lot of pain. (*Id*.; Plaintiff Depo., pp. 226–28; Plaintiff Depo. Exhibit 56, ECF No. 13-1, PAGEID # 487.) Mr. Matthaes referred Plaintiff to the emergency

4

department and asked if she needed a squad to come pick her up. (Matthaes Depo., p. 53; Plaintiff Depo. Exhibit 56.) However, Plaintiff drove herself to the emergency room, went out on medical leave, and never returned to work at FMC or for any other ODRC facility. (Plaintiff Depo., pp. 228, 290–91).

Mr. Matthaes does not recall saying anything to Plaintiff about his experience with this patient as a fall risk. (Matthaes Depo, p. 54.) Plaintiff, however, recalls learning from Mr. Matthaes after her injury that he knew the patient was a fall risk. (Plaintiff Aff. at ¶ 2.)

After a few months and Plaintiff was unable to return to work, ODRC contacted Plaintiff on September 26, 2016, to advise that she was being reviewed for involuntary disability separation pursuant to Ohio Administrative Code §§ 123:1-30-01, 123:1-30-02. (Plaintiff Depo. Exhibit 71, ECF No. 13-1, PAGEID # 552.) A pre-separation hearing was scheduled on October 3, 2016, to give Plaintiff the opportunity to present medical evidence that she could perform her job duties. (*Id*.) At the hearing, the decision was made to give Plaintiff additional time until November 18, 2016, to submit medical documentation demonstrating her ability to return to work. (Plaintiff Depo. Exhibit 72, ECF No. 13-1, PAGEID # 553.) After that documentation was submitted and reviewed, it was determined that Plaintiff was unable to return to work at that time. (*Id*.) Plaintiff was involuntarily disability separated as of December 9, 2016. (*Id*.; Plaintiff Depo. Exhibit 73, ECF No. 13-1, PAGEID # 554.)

**B.     Procedural History**

Plaintiff filed this action against ODRC on December 11, 2017, asserting claims of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*. (ECF No. 1.) ODRC has moved for summary judgment on

these claims (ECF No. 18) and Plaintiff has filed an opposition (ECF No. 19). With the filing of ODRC's reply memorandum (ECF No. 21), this matter is ripe for resolution.

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

# III.

**A.     Retaliation**

Plaintiff alleges that ODRC retaliated against her when she complained of race discrimination in violation of her rights under Title VII. (Compl., ¶¶ 21–23.) "Title VII prohibits employers from 'discriminat[ing] against . . . [an employee] ... because [the employee] has opposed any . . . unlawful employment practice . . . or because [the employee] has made a charge' that the employer has engaged in an unlawful employment practice." *Land v. Southern States Cooperative, Inc.*, 740 F. App'x 845, 850 (6th Cir. 2018) (quoting 42 U.S.C. § 2000e-3(a)); *see also Kappen v. Ashley Med. Supply, Inc.*, 695 F. App'x 94, 95 (6th Cir. 2017) ("It is unlawful for an employer to retaliate against an employee who has engaged in conduct protected by Title VII.") (citing 42 U.S.C. § 2000e-3(a)).

When asserting a claim for retaliation, "'[a]n individual must provide either direct or circumstantial evidence of . . . retaliation.'" *Allen v. Lincare, Inc.*, No. 18-1154, 2018 WL 7347775, at *1 (6th Cir. Aug. 27, 2018) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 864–65 (6th Cir. 2003)). Where the plaintiff relies on circumstantial evidence, courts consider the claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*; *Kappen*, 695 F. App'x at 96. "This framework first places on the plaintiff the burden of establishing her prima facie case of discrimination or retaliation." *Allen*, 2018 WL 7347775, at *1 (citations omitted). If the plaintiff meets her burden, "[t]hen the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action, and finally it shifts back to the plaintiff, who must show that the defendant's articulated reason is a pretext for discrimination." *Id.* (internal citations and quotation marks omitted); *see also Kappen*, 695 F. App'x at 96. However, "[b]efore bringing suit under Title VII, a claimant must

exhaust her administrative remedies." *Zeller v. Canadian Nat'l Ry. Co.*, 666 F. App'x 517, 524 (6th Cir. 2016) (internal citation and quotation marks omitted); *see also Russ v. Memphis Light Gas & Water Division*, 720 F. App'x 229, 236 (6th Cir. 2017) ("The exhaustion doctrine precludes an employee from suing under Title VII . . . unless she has exhausted her administrative remedies.").

In this case, ODRC argues that Plaintiff has failed to exhaust her administrative remedies as to her retaliation claim and, even if she did properly exhaust, her claim still fails on the merits. The Court addresses these arguments in turn.

1. **Exhaustion**

As previously noted, Plaintiff must exhaust her administrative remedies before filing suit under Title VII. *Zeller*, 666 F. App'x at 524. "To exhaust, an employee must file a charge of discrimination with the EEOC that includes all claims the employee intends to bring in district court." *Russ*, 720 F. App'x at 236 (citing *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (finding that a plaintiff's EEOC form fails to bring a retaliation charge when the plaintiff did not check the box entitled "retaliation" and the narrative does not allege facts from which the defendant could conclude that the plaintiff intends to bring a retaliation claim)). "Only claims that are included in the charge or are 'reasonably related to or grow out of the factual allegations in the EEOC charge' may be heard in federal court." *Id*. (citations omitted); *see also Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 658 (6th Cir. 2016) ("'As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge.'") (quoting *Younis,* 610 F.3d at 361); *Younis*, 610 F.3d at 361 ("[B]ecause aggrieved employees— and not attorneys—usually file charges with the EEOC, their pro se complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the

8

factual allegations in the EEOC charge.") (citations omitted). "As a result, 'whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'" *Younis*, 610 F.3d at 361 (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)). "'This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion.'" *Deister*, 647 F. App'x at 658 (quoting *Younis*, 610 F.3d at 361).

In this case, the allegations in Plaintiff's charge and written narrative are insufficient to exhaust her administrative remedies for a retaliation claim under Title VII. Here, Plaintiff filed her charge on September 1, 2016. (Plaintiff's Depo. Exhibit 61, ECF No. 13-1, at PAGEID # 492.) In response to the section directing applicants to select the appropriate box(es) for the cause(s) of discrimination, Plaintiff checked boxes for "Race," "Sex," "Age," and "Disability," but she did not check the "Retaliation" box. (*See id*.) The narrative portion of the charge underneath these boxes does not use the word "retaliation" and does not describe any retaliatory behavior. (*See id*.) Notably, Plaintiff does not allege that anyone took a materially adverse employment action against her because she engaged in protected activity, asserting instead that Mr. Matthaes harassed her "[s]ince [he] became my supervisor[.]" (*Id*.) Plaintiff's charge and narrative therefore describe claims for discrimination but are completely silent as to the basis for a retaliation claim. Based on this charge and its narrative, "a Title VII retaliation claim was neither reasonably related to the factual allegations in the charge, nor could it have grown out of them." *Russ*, 720 F. App'x at 237. Accordingly, Plaintiff did not exhaust her administrative remedies for a Title VII retaliation claim. *Id*.; *see also Deister*, 647 F. App'x at 658 (finding that

9

the plaintiff failed to exhaust his administrative remedies where he "failed to check the box in his EEOC form entitled 'retaliation.' Nor does the narrative section include facts that would suggest that he intended to bring an ADA retaliation claim").

Plaintiff nevertheless insists that she properly exhausted her administrative remedies as to her retaliation claim, pointing to a twelve-page handwritten document entitled "Overview" that she submitted to the OCRC before she completed and signed her charge. (ECF No. 19 at 7; Plaintiff's Depo. Exhibit 63, ECF No. 19-4 (copy of "Overview"); Wadlington Depo., pp. 269–70.) As a preliminary matter, it is not clear that this "Overview" is properly considered as part of Plaintiff's charge. *Cf. Russ*, 720 F. App'x at 237 ("[A] filing other than a charge will not be deemed a charge unless 'an 'objective observer' would believe that the filing 'taken as a whole' suggests that the filer 'requests the agency to activate its machinery and remedial processes.'") (citations omitted).

Even if the "Overview" is part of the charge, it nevertheless fails to establish that a retaliation claim is reasonably related to or grows out of the factual allegations in the charge. Plaintiff specifically argues that the "Overview" "discussed Matthaes' constant threats of disciplinary actions, which can be seen as retaliation and/or discrimination." (ECF No. 19 at 7 (citing "Wadlington Dep. Ex. 63, p. 6.) Plaintiff's equivocal argument fails to persuade this Court. First, implicit in her argument is the concession that the alleged threats of disciplinary "can be seen" as only evidence of discrimination, not retaliation, and can also not be seen as evidence of either discrimination or retaliation.

Second, contrary to Plaintiff's characterization, the cited page of the "Overview" does not describe "constant threats of disciplinary actions[.]" Instead, it alleges that Mr. Matyhaes used his position to, *inter alia*, "[b]e[] intimidating with threatening statements which can lead to

monetary fines and or disciplinary actions." (Overview, ECF No. 19-4, at PAGEID # 760.) Even construing this language liberally, the Court cannot conclude that a retaliation claim is reasonably related to or grows out of the factual allegations in the charge; indeed, the Letters of Determination also do not refer to retaliation. (*See* Plaintiff's Depo. Exhibit 65, ECF No 13-1, PAGEID ## 536–38; Plaintiff's Depo. Exhibit 68, ECF No 13-1, PAGEID ## 542–43.) For these reasons, Plaintiff did not exhaust her administrative remedies and ODRC is entitled to summary judgment on her retaliation claim.

### 2. Merits

However, even if she exhausted her administrative remedies as to this claim, Plaintiff has not met her burden with respect to establishing her retaliation claim. Here, because Plaintiff does not offer direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies. As previously discussed, this framework first imposes the burden on Plaintiff to establish a prima facie case of retaliation. *Allen*, 2018 WL 7347775, at *1 (citations omitted). "To establish a prima facie case of retaliation, a plaintiff must show that: (1) [s]he engaged in protected activity; (2) h[er] employer knew of the protected activity; (3) [s]he was subjected to an adverse employment action; and (4) the adverse action was causally related to the protected activity." *Grose v. Mnuchin*, No. 18-5746, 2019 WL 7603383, at *4 (6th Cir. Sept. 27, 2019) (citations omitted). Although the parties dispute whether Plaintiff has met each one of these elements, the Court will assume *arguendo* that Plaintiff has established her prima facie case.

Once a plaintiff establishes a prima facie case, the burden next "shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action[.]" *Id*. (internal citations and quotation marks omitted). Here, ODRC argues that Plaintiff was moved from the clinic to the floor for institutional needs. (ECF No. 18 at 13–14; ECF No. 21 at 8–10.) Specifically,

supervisors had the right to move nurses to balance the needs of the patients in the institution. (Ajongako Depo., pp. 7, 11–12, 16–17; Matthaes Depo., pp. 16–17, 35; Plaintiff Depo., pp. 34–35.) Accordingly, supervisors, including Mr. Matthaes, had the right to move nurses to the floor if there was a need and, indeed, people were moved around all the time. (*Id*.) Although most of the nursing staff did not want to be moved, supervisors had to move nurses to meet the need of the patient, not to punish its employees. (Ajongako Depo., p. 16.) ODRC has therefore satisfied its burden of articulating a non-discriminatory reason for moving Plaintiff from the clinic to the floor.

Because ODRC articulated a legitimate non-discriminatory reason for assigning Plaintiff to the floor, the burden "shifts back to the plaintiff, who must show that the defendant's articulated reason is a pretext for discrimination." *Allen*, 2018 WL 7347775, at *1 (citations omitted). "An employee can establish pretext by demonstrating '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the employment action], or (3) that they were insufficient to motivate [the employment action].'" *Grose*, 2019 WL 7603383, at *4 (quoting *Blizzard v. Marion Tech. Coll*., 698 F.3d 275, 285 (6th Cir. 2012)).

Here, Plaintiff presents no evidence demonstrating that she was given a reason other than institutional need when she was transferred from the clinic to the floor, that supervisors (including Mr. Matthaes) do not have the authority to move individuals for institutional need, or that there was no such need for her to assist on the floor on June 6, 2016. (*See generally* ECF No. 19.) Instead, Plaintiff argues that Mr. Matthaes's reassignment order on June 6, 2016, "could only have been made to demean and degrade" Plaintiff because she was a LPN and the position of Nurse's Aide, which she alleges Mr. Matthaes told her to perform when he transferred her to the floor, was previously abolished. (*Id*. at 12.) She goes on to argue that Mr.

12

Matthaes knowingly put Plaintiff in harm's way because he could have told her himself that the patient who fell on her was a fall risk or he could have assigned her as a nurse to the floor, which would have resulted in her receiving a shift report alerting her to the fall risk. (*Id*. at 12–13.)

Plaintiff's arguments are not well taken. As a preliminary matter, Plaintiff's contention that Mr. Matthaes assigned her as a Nurse's Aide on the floor on June 6, 2016, in a deliberate attempt to injure her is based on speculation. As previously noted, Mr. Matthaes had occasionally reassigned Plaintiff to the floor and she was not injured by a falling patient on those previous occasions. The Court therefore agrees with ODRC that "to assume that Matthaes purposely assigned Wadlington to the floor on June 6, 2016, so that the patient in question could fall on her and injure her badly enough so that she would become disabled is beyond speculation." (ECF No. 21 at 9.) Plaintiff's speculation and unsubstantiated assertions are insufficient at the summary judgment stage. *See Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) ("Additionally, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment."); *Kyle-Eiland v. Neff*, 408 F. App'x 933, 943 (6th Cir. 2011) (noting the summary judgment standard that requires that "evidence in the record" be viewed in the light most favorable to the nonmoving party "does not require that all bald assertions, opinions, or even genuinely held beliefs asserted by the nonmoving party be adopted wholeheartedly by a court, even when such assertions are completely unsupported by the record."); *Meeks v. Schofield*, 10 F. Supp. 3d 774, 784 (2014) ("Accordingly, speculative and conclusory allegations, even if made within a verified complaint, are insufficient to withstand a motion for summary judgment.").

In any event, even if Mr. Matthaes told Plaintiff to specifically work as a Nurse's Aide on

the floor on June 6, 2016,[1] this reassignment does not establish pretext. Sometime in 2014 or 2015, ODRC had eliminated the position of Nurse's Aide, requiring the nurses to perform all patient duties without assistance from aides. (Ajongako Depo., pp. 30–33.) Notably, nurses were always (both before and after the elimination of the Nurse's Aide position) responsible for the total care of the patient, including bathing and helping patients in and out of a wheelchair to a bed. (*Id.*) Accordingly, even if he categorized Plaintiff's reassignment as a Nurse's Aide position, Mr. Matthaes did not require Plaintiff to perform duties different than what she would have been responsible for as a LPN. (*Id.*)

Although she need not "present independent evidence that the proffered reason is pretext," "the facts relied upon in building [her] prima facie case . . . are not enough to establish" pretext. *Clemons v. Metro. Gov't of Nashville*, 664 F. App'x 544, 548 (6th Cir. 2016) (internal quotation marks and citations omitted). Here, Plaintiff's general assertions that Mr. Matthaes's reassigning her to the floor on June 6, 2016, were retaliatory are devoid of any evidence establishing that the reassignment was pretextual and not based on institutional need. *See Kappen v. Ashley Med. Supply, Inc.*, 695 F. App'x 94, 97 (6th Cir. 2017) ("Kappen has not produced evidence sufficient to rebut Metro's proffered reason for Kappen's termination and therefore fails to establish that Metro's proffered reason was pretext for unlawful retaliation."). For these reasons, ODRC is entitled to summary judgment on Plaintiff's retaliation claim. *Clemons*, 664 F. App'x at 547–48 ("[T]he district court was correct in granting summary judgment in favor of Metro on the retaliation claim because Clemons ultimately failed to explain why Metro's legitimate reasons for asking him to move furniture were pretextual. ").

---

[1] Mr. Matthaes disputes that he told Plaintiff to work as a Nurse's Aide on June 6, 2016, because she was functioning as a floor nurse that day. (Matthaes Depo., p. 53.)

### B. Race Discrimination

The Complaint also asserts a claim for race discrimination under Title VII. (Compl., ¶¶ 16–20) and ODRC has moved for summary judgment on this claim. (ECF No. 18, at 8–14). However, in her opposition brief, Plaintiff explicitly states that she "will address only the claim for retaliation by ODRC regarding her complaints of race discrimination." (ECF No. 19, at 5.) Plaintiff therefore has abandoned her race discrimination claim, entitling ODRC to summary judgment on this claim. *See Messenheimer v. Coastal Pet Prods., Inc.*, 764 F. App'x 517, 520 (6th Cir. 2019) ("But she [the plaintiff] failed to address this claim below in her response to Coastal's motion for summary judgment, so it is 'deemed to have [been] abandoned.'" (quoting *Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 870 (6th Cir. 2015))); *Borden v. Antonelli College*, 304 F. Supp. 3d 678, 691–92 (S.D. Ohio 2018) ("Under binding Sixth Circuit precedent, 'a plaintiff is deemed to have abandoned a claim when the plaintiff fails to address it in response to a motion for summary judgment.'" (quoting *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013))); *McNamara v. Gen. Motors, LLC*, 189 F. Supp.3d 685, 699–700 (N.D. Ohio 2016) ("Plaintiff offers no opposition to Defendant's argument that Plaintiff cannot establish a triable claim of hostile work environment. . . . Because Plaintiff failed to meet his burden in opposing summary judgment on his harassment claim, Plaintiff has abandoned this claim and waived any argument concerning dismissal of such claim.") (citations omitted).

### IV.

For the foregoing reasons, ODRC's Motion for Summary Judgment (ECF No. 18) is **GRANTED** in its entirety. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendant ODRC.

p

**IT IS SO ORDERED.**


Date: March 30, 2020 /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
CHIEF UNITED STATES MAGISTRATE JUDGE